UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZOLTAN KONDER, <br><br> Plaintiff, <br><br> vs. <br><br> CIT GROUP INC., ELLEN R. ALEMANY, MICHAEL L. BROSNAN, MICHAEL A. CARPENTER, DORENE C. DOMINGUEZ, ALAN FRANK, WILLIAM M. FREEMAN, R. BRAD OATES, GERALD ROSENFELD, JOHN R. RYAN, SHEILA A. STAMPS, KHANH T. TRAN, and LAURA S. UNGER, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Zoltan Konder ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows::

**NATURE AND SUMMARY OF THE ACTION**

1.  Plaintiff brings this action against CIT Group Inc. ("CIT" or the "Company") and the members of CIT's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to merge with First Citizens BancShares, Inc. ("First Citizens") and FC Merger Subsidiary IX, Inc., ("Merger Sub") (the "Proposed Transaction").

2.  On October 16, 2020, CIT announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which each CIT stockholder will receive

0.0620 shares of First Citizens common stock for each share of CIT common stock they own. Upon completion of the Proposed Transaction, First Citizens stockholders will own approximately 61% and CIT stockholders will own approximately 39% of the combined company.

3.  On November 16, 2020, First Citizens filed a Registration Statement on Form S-4 (the "S-4") with the SEC. The S-4 is materially deficient and misleading because, *inter alia,* it fails to disclose material information regarding: (i) financial projections for CIT, First Citizens and the pro forma company; (ii) the data and inputs underlying the financial analyses that support the fairness opinions provided by the Company's financial advisors, Keefe, Bruyette & Woods, Inc. ("KBW") and Morgan Stanley & Co. LLC ("Morgan Stanley"); (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by KBW, Morgan Stanley and Company insiders. Without additional information, the S-4 is materially misleading in violation of the federal securities laws.

4.  The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains corporate offices in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of CIT.

9. Defendant CIT is a Delaware corporation, with its principal executive offices located at 11 West 42nd Street, New York, New York 10036 and a corporate office located at One CIT Drive, Livingston, New Jersey 07039. CIT's common stock trades on the New York Stock Exchange under the ticker symbol "CIT."

10. Defendant Ellen R. Alemany ("Alemany") has served as Chief Executive Officer ("CEO") of the Company since April 2016, Chairwoman of the Board since May 2016, and a director of the Company since January 2014.

11. Defendant Michael L. Brosnan has served as a director of the Company since November 2016.

12. Defendant Michael A. Carpenter has served as a director of the Company since May 2016.

13. Defendant Dorene C. Dominguez has served as a director of the Company since February 2017.

14. Defendant Alan Frank has served as a director of the Company since August 2015.

15. Defendant William M. Freeman has served as a director of the Company since July 2003.

16. Defendant R. Brad Oates has served as a director of the Company since December 2009.

17. Defendant Gerald Rosenfeld has served as a director of the Company since January 2010.

18. Defendant John R. Ryan has served as Lead Director of the Company since May 2008 and a director of the Company since July 2003.

19. Defendant Sheila A. Stamps has served as a director of the Company since February 2014.

20. Defendant Khanh T. Tran has served as a director of the Company since July 2017.

21. Defendant Laura S. Unger has served as a director of the Company since January 2010.

22. Defendants identified in paragraphs 10-21 are referred to herein as the "Board" or the "Individual Defendants."

23. Relevant non-party First Citizens is a Delaware corporation, with its principal executive offices located at 4300 Six Forks Road, Raleigh, North Carolina 27609. First Citizens' common stock trades on the Nasdaq Global Select Market under the ticker symbol "FCNCA."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

24. CIT is a bank holding company and a financial holding company with $46 billion of earning assets and total deposits of $35 billion at December 31, 2019. CIT provides financing, leasing and advisory services principally to middle-market companies and small businesses in a wide variety of industries, primarily in North America. The Company also provides banking and related services to commercial and individual customers through its banking subsidiary, CIT Bank, N.A. ("CIT Bank"), which includes over 60 branches located in Southern California and its online bank.

25. On July 21, 2020, CIT announced its second quarter 2020 financial results. Defendant Alemany commented on the quarter, stating:

> The strength and resiliency of CIT today is the result of a multi-year enterprise transformation. Our seasoned management team has the agility to navigate the current environment, while supporting our customers, managing our risks, and unlocking areas of opportunity. While our results continued to be affected by the pandemic, our diverse franchise and deep industry and asset class expertise allowed us to win business in sectors of strength in the commercial market . . . .
>
> The integration of the recent acquisition [of Mutual of Omaha Bank] remains on track, and we are achieving efficiencies ahead of schedule as we bring our businesses together. In addition, we posted solid growth in our lower-cost homeowner association and commercial deposit channels, as we advanced those initiatives. While the economic environment remains dynamic, we are focused on continually adapting, improving and delivering on opportunities that strengthen our company.

26. On October 16, 2020, CIT announced its third quarter 2020 financial results, including third quarter total net revenue of $474 million, as compared to total net revenue of $454 million during the same quarter of 2019. Defendant Alemany commented on the results, stating:

> Third quarter results reflected a return to profitability for CIT as we continued to navigate the business amid a dynamic economic environment related to the pandemic. Our expertise across diverse commercial sectors allowed us to originate loans and leases in growth areas such as power and renewable energy, technology,

telecom and healthcare. Deposit costs declined 32 basis points as we continued to post solid growth in the homeowner association and commercial deposit channels, while driving costs down in the retail channels. Operating expenses declined, capital and liquidity remained solid and our credit reserve is strong.

27. On October 16, 2020, CIT and First Citizens issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> RALEIGH, North Carolina and NEW YORK, New York – October 16, 2020 – First Citizens BancShares, Inc. (NASDAQ: FCNCA) ("First Citizens"), the parent company of First-Citizens Bank & Trust Company, and CIT Group Inc. (NYSE: CIT) ("CIT"), the parent company of CIT Bank, N.A., jointly announced today that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals to create the 19th largest bank in the United States based on assets.
>
> The transformational partnership will create greater scale to drive growth, improve profitability and enhance stockholder value. The transaction brings together the complementary strengths of First Citizens' low-cost retail deposit franchise and full suite of banking products with CIT's national commercial lending expertise and strong market positions. In addition, it creates a more diversified deposit strategy with First Citizens' 550+ full-service retail banking locations in key growth MSAs, including across the Southeast, and CIT's rapidly growing homeowner association business, leading direct bank and complementary Southern California retail branch network.
>
> Under the terms of the definitive merger agreement, which was unanimously approved by the Boards of Directors of both companies, CIT stockholders will receive 0.0620 shares of First Citizens class A common stock for each share of CIT common stock they own. First Citizens stockholders will own approximately 61% and CIT stockholders will own approximately 39% of the combined company.
>
> The combined company will operate under the First Citizens name and will trade under the First Citizens ticker symbol FCNCA on the Nasdaq stock market. The combined company will be headquartered in Raleigh, N.C., and will maintain significant operation centers in New York, Pasadena, Omaha, Phoenix, Jacksonville, Fla., New Jersey and Columbia, S.C., among other locations.
>
> Frank Holding, Jr., Chairman and CEO of First Citizens, will retain the same roles at the combined company. Ellen R. Alemany, Chairwoman and CEO of CIT, will assume the role of Vice Chairwoman and play a key role in the merger integration. In addition, she will serve on the Board of Directors of the combined company.

> The Board of Directors of the combined company will consist of 14 directors, the current 11 First Citizens Board members and three CIT Board members, including Ms. Alemany.
>
> "This is a transformational partnership for First Citizens and CIT designed to create long-term value for all of our constituents including our stockholders, our customers, our associates and our communities," said Frank Holding, Jr. "We have long admired CIT's market-leading commercial business, including their strong market position across multiple asset classes. Under Ellen's leadership, CIT has made tremendous progress in reducing its cost of funds, enhancing risk management processes and retaining key talent. First Citizens has a long history of delivering strong returns to our stockholders, gathering low-cost deposits and driving strong earnings, which are all supported by an exceptional credit culture, strong capital and excellent risk management. Together, First Citizens and CIT will be able to leverage both companies' unique attributes to create the 19th largest bank in the country, well-positioned to compete across the United States."
>
> Ellen R. Alemany, Chairwoman and CEO of CIT, said, "Frank and I have long respected each other's companies and believe this transaction will accelerate our strategic goals by bringing together the expertise of both banks to create scale, strength and value. I'm proud of the work we have done to transform CIT in recent years to a leading, national commercial bank. This transaction will build on those efforts and more fully unlock the potential in our core franchises. In addition, the strength that is created as a larger U.S. bank will enable greater opportunities for our team, our customers and our communities."

**The S-4 Misleads CIT Stockholders by Omitting Material Information**

28.     On November 16, 2020, defendants filed the materially misleading and incomplete S-4 with the SEC. Designed to convince CIT's stockholders to vote in favor of the Proposed Transaction, the S-4 is rendered misleading by the omission of critical information concerning: (i) financial projections for CIT, First Citizens and the pro forma company; (ii) the data and inputs underlying the financial analyses that support the fairness opinions provided by the Company's financial advisors, KBW and Morgan Stanley; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by KBW, Morgan Stanley and Company insiders.

***Material Omissions Concerning Financial Projections for CIT, First Citizens and the Pro Forma Company***

29. The S-4 omits material information regarding financial projections for CIT, First Citizens and the pro forma company.

30. For example, the S-4 sets forth, "CIT management approved for use certain publicly available consensus "street estimates" for CIT, as extrapolated for certain fiscal years based on CIT's guidance that was provided to and used by KBW and Morgan Stanley for the purpose of performing their respective financial analyses in connection with their respective opinions[.]" S-4 at 115. The S-4 fails, however, to disclose the CIT Street Forecasts utilized by KBW and Morgan Stanley in the financial analyses underlying their respective fairness opinions.

31. The S-4 further fails to disclose the "estimates regarding certain pro forma financial effects of the first step merger on First Citizens (including, without limitation, the cost savings and related expenses expected to result or be derived from the first step merger)" (*id.* at 92) and the "information relating to certain strategic, financial and operational benefits anticipated from the first step merger, prepared by the managements of CIT and First Citizens, respectively (such information is referred to herein as the "Synergies")" (*id.* at 106) utilized by KBW and Morgan Stanley, respectively.

32. The S-4 also fails to disclose the Case 1 Adjusted CIT Financial Projections and the Case 2 Adjusted CIT Financial Projections utilized by Morgan Stanley in its analyses.

33. The omission of this material information renders certain portions of the S-4 materially misleading, including, inter alia, the following sections of the S-4: "Certain Unaudited Prospective Financial Information" and "Opinions of CIT's Financial Advisors."

*Material Omissions Concerning KBW's and Morgan Stanley's Financial Analyses*

34. The S-4 fails to disclose material information concerning the financial analyses performed by KBW and Morgan Stanley.

35. The S-4 describes KBW's and Morgan Stanley's fairness opinions and the various valuation analyses they performed in support of their opinions. However, the description of KBW's and Morgan Stanley's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, CIT's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on KBW's and Morgan Stanley's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

36. With respect to KBW's *CIT Selected Companies Analysis – Selection Based on the Size of Total Assets*, *CIT Selected Companies Analysis – Selection Based on the Deposits Operations*, *First Citizens Selected Companies Analysis*, *and Pro Forma Selected Companies Analysis*, the S-4 fails to disclose the individual multiples and metrics for each of the companies observed in the analyses.

37. With respect to KBW's *Relative Contribution Analysis*, the S-4 fails to disclose: (i) the historical balance sheet data for First Citizens and CIT as of September 30, 2020; (ii) the CIT Street Forecasts used in the analysis; (iii) the financial forecasts and projections of CIT (with respect to fiscal years 2021, 2022 and 2023) provided by CIT management, as adjusted based on CIT management's guidance; (iv) the financial forecasts and projections of First Citizens (with respect to fiscal years 2021, 2022 and 2023) provided by First Citizens management; and (v) the diluted CIT share count as of September 30, 2020 and diluted First Citizens share count as of September 30, 2020.

38. With respect to KBW's *Pro Forma Financial Impact Analysis*, the S-4 fails to disclose: (i) the closing balance sheet estimates as of March 31, 2021 for First Citizens and CIT; (ii) the "CIT Street Forecasts" used in the analysis; (iii) the financial forecasts and projections of

First Citizens provided by First Citizens management; and (iv) the pro forma assumptions (including, without limitation, the cost savings and related expenses expected to result from the first step merger as well as certain accounting adjustments and restructuring charges assumed with respect thereto) provided by CIT management.

39. With respect to KBW's *CIT Discounted Cash Flow Analysis*, the S-4 fails to disclose: (i) the CIT Street Forecasts for 2021 and 2022 used in the analysis; (ii) the individual inputs and assumptions underlying the discount rates ranging from 11.0% to 14.0%; (iii) the excess cash flows that CIT could generate over the 5-year period from 2021 through 2026; and (iv) CIT's terminal value.

40. With respect to KBW's *First Citizens Discounted Cash Flow Analysis*, the S-4 fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 12.0%; (ii) the excess cash flows that First Citizens could generate over the 5-year period from 2021 through 2026; and (iii) First Citizens' terminal value.

41. With respect to KBW's *Pro Forma Combined Discounted Cash Flow Analysis*, the S-4 fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%; (ii) the estimated excess cash flows that the pro forma combined entity could generate over the 5-year period from 2021 through 2026; (iii) the pro forma combined entity's terminal value; and (iv) the cost savings and related expenses and accounting adjustments and restructuring charges used in the analysis.

42. With respect to Morgan Stanley's *CIT Public Trading Comparables Analysis* and *First Citizens Public Trading Comparables Analysis*, the S-4 fails to disclose: (i) the Case 1 Adjusted CIT Financial Projections and Case 2 Adjusted CIT Financial Projections utilized in the

analyses; and (ii) the individual multiples and metrics for each of the companies observed in the analyses.

43. With respect to Morgan Stanley's *CIT Dividend Discount Analysis*, the S-4 fails to disclose: (i) the CIT Street Forecasts for 2021 and 2022 used in the analysis; (ii) the individual inputs and assumptions underlying the discount rates ranging from 12.5% to 14.0%; and (iii) CIT's terminal value.

44. With respect to Morgan Stanley's *CIT Analyst Price Targets Analysis*, the S-4 fails to disclose: (i) the individual price targets analyzed; and (ii) the sources thereof.

45. With respect to Morgan Stanley's *First Citizens Dividend Discount Analysis*, the S-4 fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 6.8% to 8.8%; and (ii) First Citizens' terminal value.

46. With respect to Morgan Stanley's *Pro Forma Accretion/Dilution Analysis*, the S-4 fails to disclose: (1) the CIT Street Forecasts as used in the analysis; and (2) the Synergies as used in the analysis.

47. With respect to Morgan Stanley's *Pro Forma Dividend Discount Analysis*, the S-4 fails to disclose: (i) the CIT Street Forecasts used in the analysis; (ii) the Synergies used in the analysis; (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.2% to 11.2%; and (iv) First Citizens' terminal value.

48. Without such undisclosed information, CIT stockholders cannot evaluate for themselves whether the financial analyses performed by KBW and Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that positive fairness opinions could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that

stockholders can fully evaluate the extent to which KBW and Morgan Stanley's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

49. The omission of this material information renders certain portions of the S-4 materially misleading, including, inter alia, the following sections of the S-4: "Opinions of CIT's Financial Advisors" and "Certain Unaudited Prospective Financial Information."

***Material Omissions Concerning the Background of the Proposed Transaction***

50. The S-4 fails to disclose material information concerning the background process leading to the Proposed Transaction.

51. For example, the S-4 fails to disclose the terms of the confidentiality agreements the Company entered into with potential bidders, including with parties identified in the S-4 as "Company A" on June 5, 2020, and "Company B" on July 15, 2020. *See id.* at 68, 69. The S-4, however, fails to disclose whether these confidentiality agreements contained standstill provisions and/or "don't-ask, don't-waive" standstill provisions that are still in effect and currently precluding these parties from making a topping bid for the Company.

52. The omission of this material information renders certain portions of the S-4 materially misleading, including, inter alia, the following section of the S-4: "Background of the Merger."

***Material Omissions Concerning KBW's, Morgan Stanley's and Company Insiders' Potential Conflicts of Interest***

53. The S-4 fails to disclose material information concerning the potential conflicts of interest faced by KBW and Morgan Stanley.

54. The S-4 sets forth:

> In addition to the present engagement, in the two (2) years preceding the date of its opinion, KBW provided investment banking or financial advisory services to CIT and received compensation for such services. KBW acted as (i) joint book-running manager for CIT's August 2018 offering of senior unsecured notes, (ii) joint book-running manager for CIT Bank's September 2019 offering of senior unsecured fixed-to-floating rate notes, (iii) senior co-manager for CIT's November 2019 offering of preferred stock, (iv) senior co-manager for CIT's November 2019 offering of fixed-to-fixed rate subordinated notes and (v) financial advisor to CIT in connection with its September 2020 disposition of its investment management and trust business.

*Id.* at 105. The S-4 fails, however, to disclose the amount of compensation KBW received in connection with the services it provided to CIT and CIT Bank in the two years preceding the date of its fairness opinion.

55. The S-4 further states that, "[d]uring the two (2) years preceding the date of delivery of Morgan Stanley's written opinion, Morgan Stanley and its affiliates have provided financing services to CIT for which Morgan Stanley and its affiliates have received aggregate fees of approximately $1 to 5 million." *Id.* at 114. Yet, the S-4 fails to disclose the details of any services Morgan Stanley provided to First Citizens in the two years preceding the date of its fairness opinion, and any fees received for services provided.

56. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

57. The S-4 also fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

58. The S-4 sets forth:

> In connection with the execution of the merger agreement, First Citizens also entered into retention letter agreements with David Harnisch as President, Commercial Finance (the "Harnisch letter agreement") and one other executive officer of CIT with respect to the terms of their employment with and service to

>First Citizens Bank following the completion of the mergers, which will become effective upon the effective time.

*Id.* at 119. Yet, the S-4 fails to disclose the identity of the other executive offer of CIT that entered into an employment agreement with First Citizens and the details of the employment and retention-related discussions and negotiations that occurred between First Citizens, David Harnisch and the other executive officer of CIT, including who participated in all such communications, when they occurred and their content.

59. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for CIT's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

60. The omission of this material information renders certain portions of the S-4 materially misleading, including, inter alia, the following section of the S-4: "Background of the Merger."

61. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

62. Plaintiff repeats all previous allegations as if set forth in full.

63. During the relevant period, defendants disseminated the false and misleading S-4 specified above, which failed to disclose material facts necessary to make the statements, in light

of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

64. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the S-4. The S-4 was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about financial projections for CIT, First Citizens and the pro forma company, the financial analyses performed by the Company's financial advisors, the background of the Proposed Transaction, and potential conflicts of interest faced by the Company's financial advisors and Company insiders. The defendants were at least negligent in filing the S-4 with these materially false and misleading statements.

65. The omissions and false and misleading statements in the S-4 are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

66. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

67. Because of the false and misleading statements in the S-4, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

68. Plaintiff repeats all previous allegations as if set forth in full.

69. The Individual Defendants acted as controlling persons of CIT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers

and/or directors of CIT, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

70. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

72. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The S-4 purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

73. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-

9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, CIT's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of CIT, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate an S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  December 8, 2020

**WEISSLAW LLP**

By  */s/ Mark. D. Smilow*
*Mark. D. Smilow*
Richard A. Acocelli (to be admitted *pro hac vice*)
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: msmilow@weisslawllp.com

*Attorneys for Plaintiff*

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*